UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINCOLN BENEFIT LIFE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>AEI LIFE, LLC; ALS CAPITAL VENTURES, LLC; JOEL JACOB; INNOVATIVE BROKERS; and JRJ SERVICES, INC.,<br><br>Defendants. | Case No.:<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Lincoln Benefit Life Company ("Lincoln Benefit"), by and through its attorneys, Drinker Biddle & Reath LLP, hereby files this Complaint for Declaratory Judgment, and in support thereof, avers as follows:

1. This is an action for Declaratory Judgment under 28 U.S.C. § 2201. Lincoln Benefit seeks a declaration establishing its rights and obligations regarding two policies of life insurance insuring the life of Gabriella Fischer. Lincoln also seeks to recover damages from the parties responsible for procuring the subject life insurance policies.

2. In particular, Lincoln Benefit seeks a declaration that the life insurance policies are void or voidable due to (a) material misrepresentations in the applications and/or (b) a lack of insurable interest at inception.

3. Upon information and belief, Defendants Joel Jacob, Innovative Brokers, and JRJ Services, Inc. provided Lincoln Benefit with materially false information concerning Ms.

Fischer's income, net worth, the purpose of the policies, and the source of intended premium. The parties lied about this information because there was no true financial need for the policies. Instead, the policies were intended to benefit strangers who could not legally procure policies on Ms. Fischer's life.

4. Because the policies were always intended to benefit complete strangers to Ms. Fischer, the policies were mere wagers. The use of life insurance as wagering contracts is generally illegal. Such wagering contracts also violate Lincoln Benefit's internal underwriting standards and its directives to its agents.

5. Even if the policies are declared void *ab initio*, however, such a declaration may not provide Lincoln Benefit with complete relief because Lincoln Benefit incurred substantial costs and expenses, including the payment of commissions, in connection with the policies. Moreover, if the policies are not declared void, Lincoln Benefit risks suffering even more significant damages if it becomes obligated to pay death claim(s).

6. There is an actual controversy of a justiciable nature concerning the rights and obligations of the parties under the subject life insurance policies.

## PARTIES

7. Plaintiff Lincoln Benefit is a citizen of the State of Nebraska. Lincoln Benefit is a life insurance company organized and existing under the laws of Nebraska, with its principal place of business at 2940 South 84th Street, Lincoln, NE 68506.

8. Upon information and belief, Defendant AEI Life, LLC is a citizen of and domiciled in the State of New York, and Defendant AEI Life, LLC maintains its principal

address at 1428 36th Street, Ste. 219, Brooklyn, New York 11218. Defendant AEI Life, LLC is the record owner of Policy No. 01N1404934.

9. Upon information and belief, Defendant ALS Capital Ventures, LLC is a citizen of and domiciled in the State of Delaware. Defendant ALS Capital Ventures is the record owner of Policy No. 01N1404844.

10. Defendant Joel Jacob is a natural person and a citizen of the state of New York, residing at 17 Chevron Road, Unit 302, Monroe, New York 10950

11. Upon information and belief, Defendant Innovative Brokers is a New York corporation with its principal place of business at 1276 50th Street, Brooklyn, New York 11211. Innovative Brokers is therefore a citizen of New York.

12. Upon information and belief, Defendant JRJ Services, Inc., is a New York corporation with its principal place of business at 17 Chevron Road, Unit 302, Monroe, New York 10950. JRJ Services, Inc. is therefore a citizen of New York.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §1332(a)(1), because: (a) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (b) there is complete diversity between Lincoln Benefit and Defendants.

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in New Jersey. In particular, the activities relating to the procurement of the policies took place in this district.

## BACKGROUND

### Stranger-Originated Life Insurance

15. In recent years, a secondary market for life insurance has emerged in which investors obtain life insurance policies on individuals with whom they have no prior relationship. Although it is sometimes permissible for an investor to obtain an interest in a legitimately procured life insurance policy, it is unlawful to procure a policy for the sole purpose of transferring it, directly or indirectly, to an investor. Such arrangements are commonly referred to as stranger originated life insurance, or STOLI.

16. STOLI transactions run afoul of state insurable interest laws, which protect the integrity of life insurance by requiring that a policy owner have a legally cognizable interest in the insured at the time the policy is issued.

17. In order to procure a STOLI policy, STOLI investors typically work in collaboration with runners to locate potential insureds and insurance producers appointed to sell life insurance. (These investors, runners, and producers are collectively referred to as "STOLI promoters.")

18. Once STOLI promoters locate an individual who meets their profile and who will agree to collaborate in the STOLI arrangement, the STOLI promoters submit one or more applications for insurance. The STOLI promoters typically pay most or all of the prospective insured's costs, including premium payments. STOLI promoters sometimes agree to pay the prospective insured a fee upon the issuance of the policy or offer the prospective insured free insurance for a period of time.

19. In many cases, the policy application indicates that a third-party entity, such as a trust, a shell corporation, or a limited partnership, will be the policy owner and beneficiary of the life insurance proceeds. This allows the STOLI investors to acquire an interest in the entity that will receive the death benefit on the policy without disclosing the STOLI investors' involvement.

20. While there are many variations of STOLI, all STOLI programs have one thing in common: their objective is to wager on the life of an insured in which they have no familial or financial interest.

### Gabriella Fischer Policies

21. Upon information and belief, sometime prior to May 17, 2008, Gabriella Fischer was approached by Defendant Joel Jacob and/or certain STOLI promoters to participate in a STOLI scheme. Prior to issuance of the policies, a plan existed between Jacob, Innovative Services, JRJ Services, and others to procure a life insurance policy on the life of Ms. Fischer. However the policies were not intended to provide financial protection but to be transferred into the secondary market immediately upon issuance.

22. Upon information and belief, the plan called for the creation of a trust that would be the owner and beneficiary of the policies. The trust was not part of a legitimate estate planning effort but instead was used to create an instrument that would allow for the transfer of the policies, or an interest in the policies, without alerting Lincoln Benefit.

23. In accordance with this plan, on or around May 17, 2008, Jacob and JRJ Services, through Innovative Brokers, submitted applications to Lincoln Benefit for two $6.65 million life insurance policies (the "Applications") on the life of Ms. Fischer.[1]

24. At the time of the Applications, Ms. Fischer was seventy-six years old. The stated owner of the policies was to be the Gabriella Fischer Trust dated 2/19/08, and the trustee was to be Irving Fischer. Upon information and belief, these representations were false.

25. The Applications included a section titled "Financial Information," in which Jacob represented that Ms. Fischer had a net worth of $87 million.

26. Amendments to the Applications executed on June 12, 2008, and June 16, 2008, respectively, falsely represented that the premiums for the policies would not be funded directly or indirectly by any loan, advance or other financing arrangement. The amendments also falsely stated that the owner of the policies had not entered into any arrangement to sell, assign, or transfer the policies and did not plan to enter into such a transaction. *See* Exhibits C & D.

27. Based upon the applications and other materials submitted during the application processes, Lincoln Benefit issued Policy No. 01N1404934 and Policy No. 01N1404844, each with a face value of $6.65 million.

---

[1] Copies of the Fischer Policies, which contain copies of the respective applications, are attached hereto as Exhibit A and Exhibit B, respectively. Ms. Fischer's date of birth was included on the Fischer Policies and the Applications. That information, along with other identifying information and medical data, has been redacted to protect Ms. Fischer's confidentiality.

In addition to receiving applications for the policies described herein (Policy Nos. 01N1404934 and 01N1404844), Lincoln Benefit received applications for two other policies on the life of Gabriella Fischer (Policy Nos. 01N1396508 and 01N1388776). Those policies are not in force and are not the subject of this complaint.

28. Upon information and belief, the policies or interests in the policies were transferred to an investor almost immediately upon issuance. Policy No. 01N1404834 was later transferred to Defendant AEI Life, while Policy No. 01N1404844 was later transferred to Defendant ALS Capital Ventures. Neither policy was ever intended to serve the estate planning needs of Ms. Fischer. Nor did the policies provide financial protection to the Fischer family. Instead, from inception the policies were mere wagers.

## COUNT I
## BREACH OF CONTRACT
### (Against Innovative Brokers)

29. Lincoln Benefit hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

30. Effective August 5, 2006, Lincoln Benefit and Innovative Brokers entered into an Executive General Agent's Agreement. *See* the Executive General Agent's Agreement, Exhibit E. Under that agreement, Lincoln Benefit authorized Innovative Brokers to act as an agent for the purpose of developing and supervising the distribution of Lincoln Benefit's insurance products.

31. Among other things, Innovative Brokers was authorized to:

   a. Recruit and recommend persons for appointment by Lincoln Benefit as insurance agents.

   b. Train and supervise agents in accordance with Lincoln Benefit's standards and the requirements of the state or states in which they are licensed and in which they act as agents for Lincoln Benefit.

*Id.*

32. Under the contract, Innovative Brokers was obligated "at all times [to] comply with the rules and regulations of [Lincoln Benefit] pertaining to underwriting practice,

acceptance of risks, delivery of policies, and all other areas of conduct for [Lincoln Benefit's] business." *Id.* at ¶ 4.

33. The contract further provides that Innovative Brokers must adhere to Lincoln Benefit's "rules and regulations concerning ethical market conduct," which includes "carefully evaluat[ing] the insurance needs and financial objectives of clients and using sales tools (e.g. policy illustrations and sales brochures) to determine that the insurance or annuity you are proposing meets these needs." *Id.* at ¶ 8(a). The contract also requires Innovative Brokers to "communicate these standards to any agents or officer personnel" that Innovative Brokers directly supervise and request their agreement to be bound by these conditions. *Id.* at ¶ 8(f).

34. Innovative Brokers' conduct in procuring the Fischer policies constituted a breach of the contract with Lincoln Benefit because, among other things, (i) the Fischer policies lacked an insurable interest at inception; (ii) contrary to statements in the applications, the policies were not intended to meet estate planning needs; and (iii) the policies were intended as wagering contracts in the secondary market.

35. As a proximate result of the breach of the agreement, Lincoln Benefit has sustained damages because it has paid costs and commissions on policies that should not have been issued and would not have been issued but for Innovative Brokers' breach of the contract. Furthermore, in the event that the policies are not deemed void *ab initio*, Lincoln Benefit is at risk of incurring even more significant damages in the event that it is obligated to pay death claim(s).

## COUNT II
## BREACH OF CONTRACT
(Against JRJ Services, Inc. and Joel Jacob)

36. Lincoln Benefit hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

37. Effective May 17, 2008, Lincoln Benefit entered into a General Agent's Agreement with JRJ Services, Inc. and Joel Jacob. *See* the General Agent's Agreement, Exhibit F. Under that agreement, Lincoln Benefit authorized Jacob to act as an agent for the purpose of developing and supervising the distribution of Lincoln Benefit's insurance products.

38. Under the contract, JRJ and Jacob were obligated "at all times [to] comply with the rules and regulations of [Lincoln Benefit] pertaining to underwriting practice, acceptance of risks, delivery of policies, and all other areas of conduct for [Lincoln Benefit's] business." *Id.* at ¶ 4.

39. The contract further provides that Jacob and JRJ Services must adhere to Lincoln Benefit's "rules and regulations concerning ethical market conduct," which includes "carefully evaluat[ing] the insurance needs and financial objectives of clients and using sales tools (e.g. policy illustrations and sales brochures) to determine that the insurance or annuity you are proposing meets these needs." *Id.* at ¶ 8(a). The contract also requires Jacob and JRJ Services to "communicate these standards to any agents or officer personnel" that Innovative Brokers directly supervise and request their agreement to be bound by these conditions. *Id.* at ¶ 8(f).

40. JRJ's and Jacob's conduct in procuring the Fischer policies constituted a breach of the contract with Lincoln Benefit because, among other things, (i) the Fischer policies lacked an insurable interest at inception; (ii) contrary to statements in the applications, the policies were

not intended to meet estate planning needs; and (iii) the policies were intended as wagering contracts in the secondary market.

41. As a proximate result of the breach of the agreement, Lincoln Benefit has sustained damages because it has paid costs and commissions on policies that should not have been issued and would not have been issued but for JRJ's and Jacob's breach of the contract. Furthermore, in the event that the policies are not deemed void *ab initio*, Lincoln Benefit is at risk of incurring even more significant damages in the event that it is obligated to pay death claim(s).

## COUNT III
## FRAUD
### (Against Joel Jacob)

42. Lincoln Benefit hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length

43. The applications for life insurance contained the following material misrepresentations:

    i.   That the policies were intended for estate planning purposes;

    ii.  That Ms. Fischer had a net worth of $87 million;

    iii. That the premiums for the policies would not be funded directly or indirectly by any loan, advance or other financing arrangement; and

    iv.  That the owner of the policies had not entered into any arrangement to sell, assign or transfer the policies and that the owner did not plan to enter into such an arrangement.

44. Jacob's material misrepresentations were made intentionally and willfully with knowledge of their falsity.

45. Lincoln Benefit justifiably relied to its detriment upon each of these material misrepresentations.

46. Lincoln Benefit has incurred damages as a result of these material misrepresentations, including costs and expenses associated with the issuance of the policies as well as the payment of commissions. Furthermore, in the event that the policies are not deemed void *ab initio*, Lincoln Benefit is at risk of incurring even more significant damages in the event that it is obligated to pay death claim(s).

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

47. Lincoln Benefit hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length

48. The applications for life insurance contained the following material misrepresentations:

    i.    That the policies were intended for estate planning purposes;

    ii.    That Ms. Fischer had a net worth of $87 million;

    iii.    That the premiums for the policies would not be funded directly or indirectly by any loan, advance or other financing arrangement; and

    iv.    That the owner of the policies had not entered into any arrangement to sell, assign or transfer the policies and that the owner did not plan to enter into such an arrangement.

49. At the time Defendants made these representations to Lincoln Benefit, Defendants knew or should have known that these representations were false and that the proposed policies lacked an insurable interest.

50. Lincoln Benefit reasonably relied upon the truth of Defendants' representations in issuing the Fischer Policies.

51. As a proximate result of the negligent misrepresentations made by Defendants, Lincoln Benefit has sustained damages and may sustain damages in the future.

## COUNT V
## DECLARATORY JUDGMENT-LACK OF INSURABLE INTEREST
**(Against AEI Life, LLC; Joel Jacob; Innovative Brokers; and JRJ Services, Inc.)**

52. Lincoln Benefit hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

53. Policy No. 01N1404934 was procured in accordance with a plan to transfer it to a party or parties who lacked an insurable interest in Ms. Fischer's life.

54. Unbeknownst to Lincoln Benefit at the time, the policy was issued to and at the behest of an entity that lacked an insurable interest in Ms. Fischer's life.

55. Neither Ms. Fischer nor her family members provided the funding for the premium. Instead, contrary to statements during the application process, the funding was provided by third-party investors.

56. The purpose of the transaction was to gamble upon the life of Ms. Fischer.

57. Lincoln Benefit is entitled to a judicial declaration that Policy No. 01N1404934 lacked an insurable interest at inception and is therefore void *ab initio*.

## COUNT VI
## DECLARATORY JUDGMENT-LACK OF INSURABLE INTEREST
**(Against ALS Capital Ventures, LLC; Joel Jacob; Innovative Brokers; and JRJ Services, Inc.)**

58. Lincoln Benefit hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

59. Policy No. 01N1404944 was procured in accordance with a plan to transfer it to a party or parties who lacked an insurable interest in Ms. Fischer's life.

60. Unbeknownst to Lincoln Benefit at the time, the policy was issued to and at the behest of an entity that lacked an insurable interest in Ms. Fischer's life.

61. Neither Ms. Fischer nor her family members provided the funding for the premium. Instead, contrary to statements during the application process, the funding was provided by third-party investors.

62. The purpose of the transaction was to gamble upon the life of Ms. Fischer.

63. Lincoln Benefit is entitled to a judicial declaration that Policy No. 01N1404944 lacked an insurable interest at inception and is therefore void *ab initio*.

## RELIEF REQUESTED

WHEREFORE, Lincoln Benefit respectfully requests the entry of an Order by this Court as follows:

A. An award of compensatory damages as warranted under law;

B. An award of Lincoln Benefit's attorneys' fees and costs, as determined by the Court, and associated with seeking this judgment;

13

C.  A declaration that the Fischer Policies are void or voidable due to a lack of insurable interest at their inception;

D.  A declaration that Lincoln Benefit is entitled to retain the premium it has received in connection with the Fischer Policies;

E.  A declaration that the amount of any death benefit that might become due and payable in the future shall constitute recoverable damages against Defendants; and

F.  An award of such further relief as this Court deems appropriate.

Dated: July 3, 2013

**DRINKER BIDDLE & REATH LLP**

By: _____
Jason P. Gosselin
Katherine L. Villanueva
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
Jason.Gosselin@dbr.com
Katherine.Villanueva@dbr.com

*Attorneys for Plaintiff*
*Lincoln Benefit Life Company*